IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

RONALD BROWN,

                    Plaintiff,

          v.

DUNBAR ARMORED, INC.,

                    Defendant.

HONORABLE JEROME B. SIMANDLE

CIVIL NO. 08-3286 (JBS/AMD)

**OPINION**

APPEARANCES:

Joseph H. Blum, Esq.
Valerie A. Spino, Esq.
DEEB, PETRAKIS, BLUM & MURPHY, P.C.
10 Melrose Avenue
Suite 430
Cherry Hill, NJ 08003
     Counsel for Plaintiff

Joseph Kernen, Esq.
DLA PIPER US LLP
1814 East Route 70
Suite 301
Cherry Hill, NJ 08003
     Counsel for Defendant

Nicholas T. Solosky, Esq.
DLA PIPER US LLP
1650 Market Street
Suite 4900
Philadelphia, PA 19103
     Counsel for Defendant

**SIMANDLE**, District Judge:

     This employment discrimination matter is before the Court on

Defendant's motion for summary judgment and Plaintiff's cross-

motion for summary judgment [Docket Items 17 & 20].[1]  For the
reasons given below, both motions will be granted in part and
denied in part.

## I.  BACKGROUND

Except as noted, the following facts are undisputed.  In
2000, Plaintiff was hired as a driver/guard with Dunbar Armored
Inc., an armored car company.  (Kocopi Aff. ¶ 4.)  The job was
somewhat strenuous, requiring heavy lifting throughout the day.
(Id.)  In 2003, Plaintiff was promoted to crew chief, which
included similarly strenuous duties as those of driver/guard.
(Id. ¶ 5.)

On April 25, 2006, Plaintiff underwent a coronary bypass in
response to a troubling cardiac stress test.  (Brown Dep. 50:10-
51:14, Oct. 2, 2008.)  Soon after, his wife informed Christopher
Camp, Plaintiff's direct supervisor, of Plaintiff's condition.
(Camp Dep. 25:18, Oct. 24, 2008.)  Plaintiff was placed on leave
pursuant to the Family Medical Leave Act (FMLA), 29 U.S.C. §
2612(a)(1).  (Kocopi Aff. ¶ 10.)  The Defendant does not dispute
that Plaintiff's inability to work while recovering from bypass
surgery constitutes a disability under the New Jersey Law Against

---

[1]  Because an amendment to the complaint to add new parties
would now be untimely, the John Doe defendants have been removed
from the caption.

Discrimination (NJ LAD).  N.J. Stat. Ann. 10:5-1.[2]

On May 18, Plaintiff was sent a letter by Eugenia Bryant, Dunbar's Director of Benefits.  (Bryant Aff. ¶ 10.)  The letter included a form for claiming short-term disability payments, informed Plaintiff that he needed a signed medical release in order to return to work, and told Plaintiff to submit to Ms. Bryant any updated physician's statements.  (Bryant Aff. ¶ 6.) Plaintiff returned the claim form, on which one of his physicians, Dr. Gelernt, stated in block 11 that Plaintiff was anticipated to be released to return to work on July 5, 2006, about two weeks before his FMLA leave would expire.  (Bryant Aff. Ex-E.)[3]

Some time in June or perhaps early July, Plaintiff spoke with Christopher Camp over the phone.  The content of their conversations is disputed.  Plaintiff alleges that, on multiple occasions, he requested that he be returned to light duty work until he recovered, (Brown Dep. 77:24-84:6), and alleges that Defendant told him to wait until he was fully recovered and then return.  (Id.)  Defendant denies that Plaintiff requested light duty work, relying upon Camp's statement in deposition that he

_____

[2]  The need for such recovery is a disability under New Jersey law.  See generally Soules v. Mount Holiness Memorial Park, 808 A.2d 863 (N.J. Super. App. Div. 2002).

[3]  The document also states that Brown would be restricted from heavy activity until re-evaluation, which would occur in August.

3

does not remember Plaintiff making this request. (Camp Dep. at 28:19-28:21.)[4]

Plaintiff's twelve weeks of FMLA leave expired July 17. On July 24, Plaintiff was sent a letter terminating him. (Bryant Aff. ¶ 13.) The letter encouraged Plaintiff to apply to future openings at Dunbar. (Id.) That same day, Plaintiff was also seen by a cardiologist, Dr. Levi, who cleared him for light duty work and estimated that he would be released for full duty work by Sept. 1, 2006. (Pl.'s Br. Supp. Pl.'s Motion for Summ. J., Ex-F (letter from Dr. Levi).)[5] Also that same day, Plaintiff went to work to request a return to employment on a "light duty" basis, but Camp was out on vacation. (Brown Dep. 82:4-84:11.)

Camp and Brown subsequently exchanged phone calls in early August. (Camp Aff. ¶ 12.) Brown sought to be brought back to his old job, but by this point Camp had determined that the replacement employee was doing a superior job, so he elected not to rehire Brown. (Camp Dep. 35:12-35:23.) Defendant alleges that Brown could have been rehired as a driver/guard upon his

---

[4] Notably, the Camp affidavit attached to Defendant's motion for summary judgment states that Plaintiff did request a return to "light duty" work before his termination. (Camp. Aff. ¶ 9.)

[5] Defendant makes much of the fact that this letter was not sent to it, and perhaps not even seen by Plaintiff. But no one disputes that Plaintiff was indeed seen by Dr. Levi on that date and that Dr. Levi told Plaintiff he was able to perform light work and estimated him to be released for normal work by Sept. 1.

medical release to return to work, and was offered that position.
(Camp. Aff. ¶ 12.)  At some point during first weeks of August,
Brown returned his uniform and other Dunbar property, which Camp
took to be a rejection of the alleged offer.  (Camp. Aff. ¶ 13.)

On August 22, 2006, Plaintiff was cleared by Dr. Levi to
perform the responsibilities of his old job without any
restrictions. (Pl.'s Br. Supp. Pl.'s Motion for Summ. J., Ex-H
(letter from Dr. Levi).)

Plaintiff brought this action in the Superior Court of
Burlington County on May 27, 2008, alleging that Defendant
"failed to engage in the interactive process" and focusing on the
failure of Defendant to allow Plaintiff to return to work after
he was cleared for light duty work in violation of the NJ LAD.[6]
Defendant removed the action to this Court pursuant to 28 U.S.C.
§ 1441(a) based on the complete diversity of the parties and

_____

[6] The complaint is quite unclear as to whether Plaintiff
was pursuing relief on the independent ground that Defendant
failed to participate in the interactive process (a distinct form
of a failure to accommodate claim under NJ LAD), or solely based
on the failure to allow Plaintiff the specific accommodation of a
light duty position.  However, Plaintiff's intention to pursue
the failure of process claim by asserting the possibility of
temporary leave as an available accommodation was clarified
during discovery (based on the answers to contention
interrogatories and Defendant's identification of the claim in
its first-filed summary judgment motion).  Thus, while Defendant
legitimately complains about something of a bait-and-switch based
on the focus of the complaint, the Court finds that there was
sufficient grounding in the language of the complaint to give
Defendant notice that Plaintiff would pursue the failure of
process claim, which was reinforced by Plaintiff's answers in
discovery.

amount in controversy.  The present motions of summary judgment were filed in March and April of 2009.  [Docket Items 17 & 20.]

## II.  DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In deciding whether there is a disputed issue of material fact, the Court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

Although entitled to the benefit of all justifiable inferences from the evidence, "the nonmoving party may not, in the face of a showing of a lack of a genuine issue, withstand

summary judgment by resting on mere allegations or denials in the pleadings; rather, that party must set forth 'specific facts showing that there is a genuine issue for trial,' else summary judgment, 'if appropriate,' will be entered." United States v. Premises Known as 717 South Woodward Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993) (quoting Fed. R. Civ. P. 56(e)) (citations omitted).

## B.  Legal Framework of New Jersey Law Against Discrimination

The New Jersey Law Against Discrimination forbids discrimination on the basis of an employee's disability.  A prima facie case for discrimination requires a Plaintiff who has suffered an adverse employment action because of a disability to show that he or she  "was qualified to perform the essential functions of the position of employment, with or without accommodation."  Victor v. State, 952 A.2d 493, 501 (N.J. Super. App. Div. 2008).

In an effort to encourage employers to accommodate disabled employees without the need for litigation, the statute has been read to require employers to initiate an informal interactive process with the employee "[t]o determine what appropriate accommodation is necessary."  Tynan v. Vicinage 13 of Superior Court, 798 A.2d 648, 657 (N.J. Super. Ct. App. Div. 2002) (citations omitted).  Instead of putting the burden on either the

employee alone or the employer alone to identify reasonable accommodations, the mutual process "must identify the potential reasonable accommodations that could be adopted to overcome the employee's precise limitations resulting from the disability."

Id.

One can prove a violation of the NJ LAD by showing that an employer failed to uphold its end of the interactive process. Such a claim has four elements:

> (1) the employer knew about the employee's disability;
> (2) the employee requested accommodations or assistance
> for her disability; (3) the employer did not make a good
> faith effort to assist the employee in seeking
> accommodations; and (4) the employee could have been
> reasonably accommodated but for the employer's lack of
> good faith.

Tynan v. Vicinage 13 of Superior Court, 798 A.2d 648, 657 (N.J. Super. Ct. App. Div. 2002) (citations omitted).  If the employer knows of the disability, the employee has requested accommodation, and some reasonable accommodation exists, the employer is required to "consider the possibility of reasonable accommodation before firing . . . a person with a disability on the grounds that his or her disability precludes job performance."  N.J. Admin. Code § 13:13-2.5 (2009).


## C.  Failure to Participate in Interactive Process

Applying the Tynan framework to this case, the first element is not in dispute (the employer knew about the employee's

8

disability).  The remaining questions are: whether Plaintiff's actions constituted a request for accommodation sufficient to require Defendants to engage in the interactive process; whether under the circumstances in which the Defendant had no evidence of a date certain for Plaintiff's recovery, Defendant was still obligated by a duty of good faith to consider the possibility of extending Plaintiff's temporary leave as a reasonable accommodation before terminating him; and whether Plaintiff could have been reasonably accommodated by a short period of leave but for the Defendant's failure to consider the option.

i.  Initiation of the Interactive Process

    In order to create an obligation on the part of the employer to initiate a conversation about possible accommodations, the employee "must make clear that . . . assistance is desired for his or her disability."  Tynan, 798 A.2d at 657 (quoting Jones v. United Parcel Service, 214 F.3d 402, 408 (3d Cir. 2000)).  It is sufficient to trigger this process that an employee propose some accommodation, even if that particular accommodation is unreasonable.  As the Court in Taylor stated, "We do not think that it is fatal to Taylor's claim . . . that Taylor's request in March of 1994 was for an accommodation that she admitted was not possible."  Taylor v. Phoenixville School Dist., 184 F.3d 296, 315-16 (3d Cir. 1999).  Thus, any request for accommodation that

makes it clear to the employer that employee seeks accommodation generally, even if the specific accommodation requested is unreasonable, is sufficient to trigger the process.

There is a factual dispute over whether Plaintiff requested accommodation beyond the twelve weeks of leave to which he was entitled under the FMLA. Plaintiff testified in deposition that he asked for the accommodation of temporary light duty work on several occasions. (Brown Dep. 77:24-84:6.) Although Defendant's counter-evidence consists of a deposition statement that contradicts the deponent's own affidavit, the Court will not, at this stage, judge the credibility of the deponent's potential testimony that Plaintiff did not request light duty work. This factual dispute requires the Court to deny summary judgment with respect to this issue of whether Plaintiff requested the accommodation of light duty work.

Defendant maintains that the undisputed fact that no one in Dunbar's human resources department was made aware of Plaintiff's request to return on a light duty basis should mean that Defendant was not required to initiate the interactive process. The cases in this area do not appear to address the issue of what agent in a corporation the Plaintiff must address with his request for accommodation, though there are many cases in which a request for accommodation made to someone other than human resources personnel was sufficient. See, e.g, Thorson v. PSEG

10

Power, 2009 WL 47410, at *1 (N.J. Super. App. Div., Jan. 9, 2009).  In Taylor, the Third Circuit made clear that the request need only be made to the employee's direct supervisor:

> We want to make clear that the school district's duty to participate in the interactive process is triggered if Taylor notified either Menzel who was Taylor's supervisor and East Pikeland's principal, or Ferrara, the school district's administrative assistant for personnel.

Taylor v. Phoenixville School Dist., 184 F.3d 296 (3d Cir. 1999). Consistent with Taylor and the purpose of NJ LAD, it should be the employer's duty to set up procedures to relay accommodation requests from supervisors to the proper personnel rather than requiring employees to identify to whom, if not their direct supervisor, they are supposed to convey this request.

Therefore, if Plaintiff told his supervisor of his desire to return to work on light duty, even if the request was itself unreasonable, it was sufficient notice to Dunbar to require Defendant to begin the interactive process.


ii.  Requirements of the Interactive Process

The next question is whether, once the interactive process began, the Defendant was required to do more than tell the Plaintiff that he could not return without a release.  According to the Defendant, it had no obligation to even consider any accommodations because without a medical release no accommodation was possible.  (Def.'s Br. Supp. Def.'s Motion for Summ. J., 35)

("Absent a medical release . . . there simply was no point in an interactive process.")

However, temporary leave is an accommodation that is possible without a release.[7]  The fact that Plaintiff did not specifically request an extension of leave does not relieve Defendant's burden of at least considering this possibility before terminating Plaintiff.  <u>Tynan</u>, 798 A.2d at 657 ("Once a handicapped employee has requested assistance, <u>it is the employer who must make the reasonable effort to determine the appropriate accomodation</u>.") (emphasis added).

Defendant argues that it needed to know a date certain for recovery and medical release before such a temporary leave became a reasonable accommodation worth considering.  Under Defendant's interpretation of the law, employers would almost never be required to discuss the possibility of temporary leave as a reasonable accommodation since any employee who would benefit from temporary leave necessarily does not have a medical release to work, and few if any will know a date certain for their recovery.  Such an interpretation is not supported by the precedent or common sense.

Defendant relies on a series of cases which stand for the proposition that without some evidence of expected duration of the disability any leave would necessarily be open-ended.  But,

_____

[7]  <u>See</u> <u>infra</u> Part II.C.iii.

in this case, there was evidence of the expected duration of the disability: the short-term disability form indicating an anticipated return date. (Bryant Aff. Ex-E.)  Defendant cites no case, and this Court can find no case, in which a court holds that a date certain of return is required as opposed to a general estimation of the date of an employee's recovery.[8]  Indeed, because of the nature of the human body, it seems unlikely that a doctor will ever predict the date of recovery with more certainty than identifying an anticipated date or a general period of likely recovery.

More importantly, the cited cases require an anticipated date of recovery in order for the Plaintiff to prove that temporary leave was a reasonable accommodation.  That does not mean that Defendants must be aware of an anticipated date of recovery, much less a date certain, before making the minimal reasonable efforts necessary to ascertain whether a leave of absence would be reasonable under the circumstances.  The law does not require that the employer know that an accommodation is possible before making reasonable efforts to identify an

---

[8]  For example, Defendants cite Cebula v. Catalina Marketing Corp., OAL DOCKET NO.: CRT 05588-02, 2004 WL 1433192, at *8 (New Jersey Office of Admin. Law, Jan. 26, 2004), as an example of when a "date certain" is known.  But in that case, the only relevant date was an "expected recovery" date differing in no way from the "anticipated recovery" date in this case.  Id.

accommodation.[9]  Instead, the law requires an interactive process, the purpose of which is to search out accommodations that might suffice, not to explore those obvious to the employer before the process even occurs.

The Court need not detail what kind of effort an employer must make to assess whether temporary leave might be a reasonable accommodation because in this case no effort was made.  As Defendant admits, it believed that without medical release, no accommodation was possible.  (Def.'s Br. Supp. Def.'s Motion for Summ. J., 35)

Defendant maintains that its policy of allowing post-FMLA leave by requiring a written request for such leave placed the burden of continuing the interactive process on the Plaintiff to submit the relevant documents in order to request such an accommodation.  But Dunbar cannot shift its statutory burdens of the interactive process onto the shoulders of employees in this way.  Requiring a written request for accommodation, much less a written request with documentation that specifically identifies temporary leave as an accommodation and a date certain for return, before raising the issue in the interactive process is contrary to the NJ LAD.  See Tynan, 798 A.2d at 656 (holding that

---

[9]  The law does require that if Defendant fails to engage in the interactive process, Plaintiff must show that the process could have found a reasonable accommodation.  Tynan, 798 A.2d at 657.  Whether Plaintiff makes this distinct showing is discussed below in Part II.C.iii.

a written request for accommodation is not necessary to trigger the interactive process).  It may have been sufficient for Defendant to refer Plaintiff to this written policy on temporary leave as part of the interactive process, but it is not sufficient for Defendant to sit back and do nothing on the assumption that Plaintiff did not seek that accommodation because Plaintiff did not issue a written request seeking it.

Defendant also argues that the interactive process does not necessarily end with the employee's termination, and that it was in fact Plaintiff who withdrew from the process by declining the alleged offer of the driver position.  But the New Jersey regulations are quite clear that an employer must consider reasonable accommodations before terminating an employee, not after.  N.J. Admin. Code § 13:13-2.5(b) (2009).  Defendant cites Bultemeyer v. Fort Wayne Community Schools 100 F.3d 1281, 1286 (7th Cir. 1996) for the proposition that the interactive process may continue beyond termination.  Bultemeyer offers no help to Defendant.  The court merely held that when the employer received a request for accommodation a few hours after it chose to terminate an employee, it was obligated to reconsider the decision as part of the interactive process.  Id.  In other words, a termination decision made slightly before a request for accommodation might still be subject to disability discrimination protections.  Bultemeyer's holding is irrelevant to Defendant's

claim that a termination occurring well after a request for accommodation is made lawful so long as the employer subsequently makes the terminated employee a new offer of employment.

This Court finds that Defendant was obligated to make a good faith exploration of extending Plaintiff's temporary leave as a reasonable accommodation before terminating him.  The purpose of the requirement of interactive process is to spur the kind of back-and-forth between the employer and the employee necessary for them to mutually identify a reasonable accommodation.  If an employer chooses not to engage in this process, it proceeds at its own risk.  Hohider v. United Parcel Service, Inc., 574 F.3d 169, 194 (3d Cir. 2009) ("[A]n employer who fails to engage in the interactive process runs a serious risk that it will erroneously overlook an opportunity to accommodate.") (quoting Deane v. Pocono Med. Ctr., 142 F.3d 138, 149 (3d Cir. 1998)).  If it overlooks an accommodation that it could have learned was viable by engaging in the process, it is held accountable.  Id.  If it is the case that Plaintiff requested some accommodation, then Defendant simply abdicated its legal duties by mistakenly assuming that no accommodation was possible without a medical release.


iii.  Temporary Leave As A Reasonable Accommodation

The third and final question raised in applying the Tynan

16

framework is whether Plaintiff could have been reasonably
accommodated but for the Defendant's failure to properly engage
in the interactive process.  The Court agrees with Defendant that
a light duty position was not a reasonable accommodation under
the circumstances of this case.  Plaintiff was told he could not
return to work in any capacity without medical release to do so,
which he admits he never submitted.  Requiring Defendant to
create a light duty position under any circumstances is a dubious
legal claim, at best.  See Muller v. Exxon Research and
Engineering Co., 786 A.2d 143, 151 (N.J. Super. App. Div. 2001)
(holding that the NJ LAD does not "require an employer to create
a permanent light-duty position to replace a medium-duty one.").
And here, whether or not such a position existed or should have
been created, Defendant cannot be required to offer it to an
employee who has not been medically released for such work.

However, under the NJ LAD, a temporary leave of absence can,
under some circumstances, be a reasonable accommodation.  N.J.
Admin. Code § 13:13-2.5 (2009).  See Tynan v. Vicinage 13 of
Superior Court, 798 A.2d 648, 658 (N.J. Super. Ct. App. Div.
2002).  Whether a given accommodation is reasonable is a case-by-
case inquiry.  N.J. Admin. Code § 13:13-2.5(b) (2009).

The fact that the leave would occur after the exhaustion of
leave under the FMLA does not make it unreasonable.  The
regulation explaining the change to the administrative code which

17

allows temporary leave, 37 N.J. Reg. 2607(a) (July 18, 2005),
cites a New Jersey Office of Administrative Law decision, Cebula
v. Catalina Marketing Corp., OAL DOCKET NO.: CRT 05588-02, 2004
WL 1433192, at *8 (New Jersey Office of Admin. Law, Jan. 26,
2004), among the reasons for revising the statute to make clear
that temporary leave is a reasonable accommodation.  That
decision held that temporary leave was a reasonable accommodation
when complainant was prevented "from working after she had
exhausted her twelve weeks of leave under the federal Family and
Medical Leave Act, and she requested an extension of leave due to
her own medical condition."  Id.  This strongly suggests that
post-FMLA leave can be reasonable, and is also consistent with
the other reported cases on temporary leave that involve post-
FMLA leave.  See Tynan, 798 A.2d at 653.

Defendants claim that Plaintiff should be estopped from even
contending that a leave of absence was a reasonable accommodation
because of Plaintiff's response to a contention interrogatory in
discovery.  Interrogatory 15, asked Plaintiff the following:

> If you contend that, as of July 24, 2006, you would have
> been capable of performing the full-time regular duties,
> including all of the essential functions, of your regular
> position, with or without an accommodation, then identify
> the specific accommodation you believe would have enabled
> you to perform your regular job as of that date.

(Def.'s Opp. Pl.'s Summ. J., Ex-C.)

Plaintiff amended his answer to the interrogatory three

18

times.  The second and fourth (and final) version read in part,
"After engagement of the interactive process, the following
accommodations, without limitation, would have been available to
Plaintiff: [ . . . ] leaves of absence." (Pl.'s Rep. to Def.'s
Opp. Pl.'s Summ J., 5.)

Defendants argument for estoppel is based on the third
version, which said:

> Plaintiff directs Defendant to those documents previously
> produced by Plaintiff or obtained independently by
> Defendant.  By way of further answer, Plaintiff responds
> as follows: As in the past, three (3) men crews would
> have taken care of any problem I might have had; lifting
> coin is the only problem that I would have had for a
> short time.

(Def.'s Opp. Pl.'s Summ. J., Ex-C.)

Plaintiff does not, in fact, "contend that, as of July 24,
2006, [he] would have been capable of performing the full-time
regular duties."  Instead, he claims that a temporary leave of
absence would have, within a few weeks, allowed his return to
those duties.  Temporary leave does not allow an employee to
"perform [his] regular job as of that date."  Instead, it is a
way for the employee to retain his job and ultimately return with
or without some other accommodation.  Thus, this contention
interrogatory did not compel Plaintiff to identify a leave of
absence in his response.

Moreover, Plaintiff appears to have incorporated the second
answer by reference in the third amended response, stating

19

"Plaintiff directs Defendant to those documents previously produced by Plaintiff," and "[b]y way of <u>further</u> answer." (Def.'s Opp. Pl.'s Summ. J., Ex-C.) (emphasis added).

Finally, the fourth and ultimate version of the response includes leave of absence as a possible accommodation.  There simply is no way for Defendant to have been prejudiced by the third amended answer, even if it somehow displaced the second and Defendant was permitted to ignore the fourth.  The record makes clear that Defendant was on notice of the temporary leave accommodation and there is no grounds to prevent Plaintiff from asserting it.

The question remains whether temporary leave was reasonable under the particular circumstances of this Plaintiff and this Defendant.  Defendant admits in its opposition to Plaintiff's cross-motion for summary judgment that it would have granted a defined period of leave if Plaintiff had requested it in writing with supporting medical documentation.  (Def.'s Br. Opp. Pl.'s Motion for Summ. J., 5).  Unequivocal concessions of fact made in briefs are judicial admissions that bind the party who makes them.  <u>See, e.g.</u>, <u>Berckeley Inv. Group, Ltd. v. Colkitt</u>, 455 F.3d 195, 211 (3d Cir. 2006).  However, it is possible (though unlikely) that even though Defendant would have granted the leave, it would still have been an undue hardship for it to do so.  A proper determination of this issue will depend on facts

20

not yet in evidence, specifically the hardship it would have created for Dunbar.  See N.J. Admin. Code § 13:13-2.5(b).

Dunbar rested its defense of not considering temporary leave as a potential accommodation on reasoning amounting to the fallacy of the excluded middle: that without a date certain, any leave was necessarily indefinite and unreasonable.  In fact, there is a middle ground between complete certainty and complete uncertainty about Plaintiff's return to full capability, and that is the reasonable anticipation of his recovery before September.  A reasonable jury could find that if Defendant had proposed the possibility of a defined leave of absence (until Sept. 1, say) based on the short term disability form, or based on Dr. Levi's July 24 recommendation which it could have procured before terminating him, or otherwise as part of the interactive process it abdicated, Plaintiff could have been accommodated.

**D.  Termination Because of Disability**

Defendant maintains that even if Plaintiff prevails on proving that Dunbar did not properly pursue the interactive process, Plaintiff has not shown that his termination was because of his disability, a necessary element of the prima facie case that must be demonstrated before even reaching the question of interactive process.  Victor v. State, 952 A.2d 493, 501 (N.J.

Super. App. Div. 2008).  Defendant argues that Plaintiff was
terminated solely because he had exhausted his FMLA leave without
requesting more leave.

Plaintiff was repeatedly told that he could not return to
work, and Defendant continues to maintain throughout this action
that Plaintiff would not have been allowed to work by company
policy.  Defendant concedes that Plaintiff was terminated because
he did not return to work, and maintains that company policy
required him not to return until he was no longer disabled.
To hold that this termination was not because of his disability
would eviscerate the statute.


III.  CONCLUSION

A period of temporary, defined leave would have enabled Mr.
Brown to recover and return to work full time.  If such a period
of temporary leave would not have constituted an undue burden on
Dunbar, and if it could have been reached by Dunbar's good faith
consideration of the option, then the termination of Plaintiff
before this accommodation was raised, much less properly
considered, is exactly the kind of adverse employment action
because of disability the NJ LAD is intended to prevent.

Accordingly, there are only three remaining questions, which
will require fact-finding.  First, whether Defendant was put on

notice of the need to find an accommodation by Plaintiff's request for accommodation, which will depend on whether a fact-finder credits Plaintiff's or Camp's testimony on the content of their phone conversations.  Second,  whether "the employee could have been reasonably accommodated but for the employer's lack of good faith," which will depend on whether a fact-finder determines that if Defendant had proposed the possibility of a defined leave of absence, Defendant and Plaintiff could have reached an accommodation of temporary leave until September.  And third, whether a temporary leave of absence until September would have "impose[d] an undue hardship on the operation of [Dunbar's] business."  See N.J. Admin. Code § 13:13-2.5(b).

The accompanying Order will be entered.


**December 10, 2009**                         **s/ Jerome B. Simandle**
Date                                       JEROME B. SIMANDLE
                                           United States District Judge

23